MAINE SCHOOL ADMINISTRATIVE
DISTRICT NO. 35, Plaintiff

v.

MR. AND MRS. R., Defendants

Mr. and Mrs. R., Plaintiffs

v.

Maine School Administrative District
No. 35, Defendant

Nos. 00–242–P–C, 00–367–P–H.

United States District Court,
D. Maine.

Dec. 18, 2001.

---

Melissa A. Hewey, Eric R. Herlan, Esq, Drummond, Woodsum & Macmahon, Portland, ME, for Maine School Administrative District No. 35, plaintiff.

Richard L. O'Meara, Murray, Plumb & Murray, Portland, ME, for Mr & Mrs R, Defendants.

## MEMORANDUM DECISION ON MOTION FOR LEAVE TO SUPPLEMENT RECORD AND RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

DAVID M. COHEN, United States Magistrate Judge.

These consolidated actions are brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The complaint in Docket No. 00–367–P–H also asserts claims under the Rehabilitation Act, 29 U.S.C. § 794, and Maine law, specifically 20–A M.R.S.A. § 7001 *et seq.* The substance of the complaint in Docket No. 00–242–P–C has been dismissed pursuant to Fed.R.Civ.P. 41(a), with the issue of entitlement to an award of attorney fees and costs reserved until resolution of the substantive issues in Docket No. 00–367–P–H. Docket No. 25.[1] Maine School Administrative District No. 35 ("MSAD 35") seeks leave to supplement

the administrative record. Defendant/Cross Appellant's Motion to Supplement the Administrative Record, etc. ("Motion to Supplement") (Docket No. 44). I grant the motion to supplement and recommend that the court adopt the findings of fact and conclusions of law set forth below.

### I. The Motion to Supplement

MSAD 35 seeks leave to add to the record before the court the affidavit of its director of special education establishing that the student whose education is at issue in these cases graduated from high school on June 15, 2001, well after these actions were filed. Motion to Supplement at 1–2 & Affidavit of Carole A. Smith (attached thereto) ¶ 3. Mr. and Mrs. R. ("the parents") oppose this motion, contending that evidence of their son's graduation is irrelevant, and ask, in the alternative, that they be allowed to add further documents to the record. Plaintiffs' Objection to Defendant's Motion to Supplement Administrative Record, etc. (Docket No. 47) at 1, 8–9.

 Leave to present additional evidence to the court in an IDEA proceeding should be granted only when that party provides "solid justification" for the supplementation of the administrative record which it seeks. *Roland M. v. Concord Sch. Comm.,* 910 F.2d 983, 996 (1st Cir. 1990). Events that occur after the events that give rise to an IDEA appeal may render the issue for which relief is sought moot, thereby depriving the court of jurisdiction to rule on the merits of the claim. *Thomas R.W. v. Massachusetts Dep't of Educ.,* 130 F.3d 477, 479 (1st Cir.1997). Graduation of the student is one such event. *Id.* Since the student's graduation

---

1. Unless otherwise noted, references to docket numbers are to the docket of the case assigned number 00–242–P–C, where all pleadings have been recorded since the two cases were consolidated.

here might render the parents' claims moot, evidence of that fact is highly relevant, and MSAD 35 has provided solid justification for its addition to the administrative record. However, the question whether the parents sought the graduation is not relevant. Accordingly, the motion for leave to supplement the record with Smith's affidavit is granted but the parents' request to submit additional information concerning a Pupil Evaluation Team ("PET") meeting at which such a request was allegedly made is denied.

## II. Proposed Findings of Fact

1. The parents, and their son, S. R., reside in the district served by MSAD 35. Complaint (Docket No. 1) ¶ 5; Defendant's Answer ("Answer") (Docket No. 23) ¶ 5. During the 2000–01 school year, S. R., who was born on December 8, 1980, was a student at Marshwood High School, which is operated by MSAD 35. Special Education Due Process Hearing [Decision] ("Hearing Dec."), *R[ ] v. Maine School Administrative District 35,* included in Administrative Record, Volume V, at 1635.

2. MSAD 35 is the local education agency that is responsible under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.,* for providing a free appropriate public education to children with disabilities residing within its geographical borders. Complaint ¶¶ 1, 4; Answer ¶¶ 1, 4.

3. S.R. was eligible for special education services under the category of mental retardation and has been diagnosed with Downs Syndrome. Hearing Dec. at 1635. The 2000–01 school year was S.R.'s final year of eligibility for such services. *Id.*

4. Pursuant to an Individualized Education Plan ("IEP"), S.R. attended Marshwood during the 1999–2000 school year. *Id.* He received services each day at the school from 7:30 to 10:30 a.m. and thereafter was transported to Work Opportunities Unlimited ("WOU"), where he received services for the rest of the school day. *Id.* During this school year a behavioral management and support plan developed by S.R.'s Pupil Evaluation Team ("PET") was in effect. *Id.* at 1638.

5. A PET meeting on June 20, 2000 determined that an IEP for S.R. dated June 21, 2000 would be implemented for the 2000–01 school year. Administrative Record, Volume 1 (also labeled "Agency Index"), at 186, 189, 191. The IEP provided for six hours per day of vocational training through WOU with a special education teacher to visit the work site once a week, instruction in functional skills to be provided by WOU staff, a sign language consultation once a month at the work site, up to five hours per week of instruction in leisure and social skills at a non-work site by WOU staff, consultation once a month by a speech therapist and behavioral consultation as needed. *Id.* at 193.

6. Mr. and Mrs. R. disagreed with the placement set forth in the IEP. *Id.* at 159–60. On July 21, 2000 MSAD 35 requested mediation of this dispute. *Id.* On August 3, 2000 Mr. and Mrs. R. requested an administrative hearing. *Id.* at 1. A hearing officer was appointed on August 8, 2000. *Id.* at 4–5. A pre-hearing conference was held on August 25, 2000. *Id.* at 142.

7. At the pre-hearing conference the parties agreed to submit to the hearing officer for immediate decision the question of the "current educational placement" for purposes of the stay-put provision of the IDEA, 20 U.S.C. § 1415(j), which provides that "during the pendency of any proceedings . . ., unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-

current educational placement of such child." *Id.* The hearing officer ruled that the current educational placement for S.R. was the IEP that was in place for the 1999–2000 school year. *Id.*

8. On August 31, 2000 MSAD 35 filed the complaint that initiated Docket No. 00–242–P–C. Docket Sheet. That complaint sought injunctive relief to keep S.R. in programming outside Marshwood until the administrative hearing officer had issued a final decision. Complaint at 5. MSAD 35's request for a temporary restraining order was denied on September 1, 2000. Docket No. 10.

9. An administrative hearing was held on September 13, 14 and 20, 2000. Administrative Record, Volume VI, at 1. The hearing officer issued his decision on October 31, 2000. *Id.,* Volume V, at 1635. He rejected the parents' claims of procedural violations, *id.* at 1640, and found that the IEP failed to contain sufficient information as to how the student was to be instructed in those areas referred to in the goals and objectives section of the IEP; was inconsistent with state and federal requirements in providing that the vast majority of the special education services described in the IEP were to be provided by S.R.'s WOU job coach, who was not a certified teacher of regular or special education; and was deficient in failing to include a behavior intervention plan. *Id.* at 1641–43. Finally, the hearing officer found that the proposed placement at WOU met the requirement that special education services be provided in the least restrictive environment in which the student can receive an appropriate education. *Id.* at 1643–44.

10. On November 20, 2000 the parents filed the complaint in Docket No. 00–367–P–H, seeking reversal of the administrative hearing officer's conclusion concerning appropriate placement and a "comprehensive evaluation" of S.R. "as required by 34 C.F.R. § 104.35." Complaint (Docket No. 1 in 00–367–P–H) at 6. On December 22, 2000 MSAD 35 filed an answer and counterclaim seeking a declaration that S.R. posed a substantial likelihood of injury to himself or others if he remained at Marshwood and a declaration that the deficiencies in the IEP noted by the administrative hearing officer did not violate state or federal law. Answer/Counterclaim (Docket No. 4 in 00–367–P–H) at 9.

11. On January 11, 2001 the parents moved to dismiss the counterclaim as untimely. Docket No. 8 (in 00–367–P–H). The two actions were consolidated on February 12, 2001. Docket No. 27. The administrative record was filed with the court on February 16, 2001. Letter dated February 12, 2001 from Pat Neumeyer, Maine Department of Education, to William S. Brownell, Clerk. The motion to dismiss was denied on April 2, 2001. Docket No. 40. The parents filed a notice of appeal from this decision on May 7, 2001. Docket No. 42. The court notified the parties that action in both of the consolidated cases would be stayed pending resolution of the appeal. Docket No. 45. On July 31, 2001 the First Circuit Court of Appeals entered an order holding appellate proceedings in abeyance pending final judgment in Docket No. 00–367–P–H. Docket No. 46.

12. Pursuant to motion and order, Docket Nos. 48 and 50, the parties filed briefs on the merits according to an agreed schedule.

## III. Proposed Conclusions of Law

### A. Applicable Legal Standards

1. The IDEA provides, in relevant part, that a state, like Maine, that receives federal financial assistance for its public schools, must ensure that:

[a] free appropriate public education is available to all children with disabili-

ties residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school.

\* \* \* \* \* \*

An individualized education program . . . is developed, reviewed, and revised for each child with a disability in accordance with section 1414(d) of this title.

\* \* \* \* \* \*

To the maximum extent appropriate, children with disabilities, including children in public or private institutions . . ., are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of the child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

\* \* \* \* \* \*

Children with disabilities and their parents are afforded the procedural safeguards required by section 1415 of this title.

20 U.S.C. § 1412(a)(1), (4), (5) & (6). The IDEA defines an IEP in relevant part as follows:

The term "individualized education program" or "IEP" means a written statement for each child with a disability that is developed, reviewed, and revised in accordance with this section and that includes—

(i) a statement of the child's present levels of educational performance including—

(I) how the child's disability affects the child's involvement and progress in the general curriculum . . .

(ii) a statement of measurable goals, including benchmarks or short-term objectives, related to—

(I) meeting the child's needs that result from the child's disability to enable the child to be involved in and progress in the general curriculum; and

(II) meeting each of the child's other educational needs that result from the child's disability;

(iii) a statement of the special education and related services and supplementary aids and services to be provided to the child . . . and a statement of the program modifications or supports for school personnel that will be provided for the child . . .;

(iv) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class . . .; [and]

(vi) the projected date for the beginning of the services and modifications . . ., and the anticipated frequency, location, and duration of those services and modifications.

20 U.S.C. § 1414(d)(1)(A).

Finally, the IDEA imposes certain procedural requirements. The state must establish procedures that include

an opportunity for the parents of a child with a disability . . . to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate education to such child, and to obtain an independent educational evaluation of the child . . ., [and]

an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

20 U.S.C. § 1415(b)(1)(& 6). When such a complaint is presented, the parents involved "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency." *Id.* § 1415(f)(1). Any party aggrieved by the findings and decision made in a due process hearing has the right to bring a civil action in the state or federal district court. *Id.* § 1415(i)(2)(A). That court shall receive the records of the administrative proceeding, hear additional evidence at the request of a party, and base its decision upon the preponderance of the evidence. *Id.* § 1415(i)(2)(B).

2. Regulations implementing the IDEA add further requirements, set forth in relevant part below:

The IEP for each child must include—

\* \* \* \* \* \*

(2) A statement of annual goals, including short-term instructional objectives; [and]

\* \* \* \* \* \*

(5) Appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether the short term instructional objectives are being achieved.

34 C.F.R. § 300.346(a).

The state educational agency must ensure that each child with a disability "is educated in the school that he or she would attend if nondisabled," unless his IEP requires some other arrangement. 34 C.F.R. § 300.552(c). An "appropriate education is defined as

[t]he provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons

as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36."

34 C.F.R. § 104.33(b)(1).

3. Section 504 of the Rehabilitation Act of 1973 provides, in relevant part:

No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794(a).

4. The Supreme Court first interpreted the Education of the Handicapped Act, popularly referred to now as the IDEA, in *Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). In that case, the Court held that "if personalized instruction is being provided with sufficient supportive services to permit the child to benefit from the instructions, and the other items [included in 20 U.S.C. § 1401(18)] are satisfied, the child is receiving a 'free appropriate public education' as defined by the Act." 458 U.S. at 189, 102 S.Ct. 3034. The "other items" include in section 1401(18) are requirements that the education is provided at public expense and under public supervision, meets the standards of the state education agency, and is provided in accordance with the requirements of section 1414(a)(5).[2] The instruction and services provided by the state must "approximate the grade levels used in the State's regular

---

**2.** Section 1414(a)(5) was repealed effective July 1, 1998. It required educational units to establish and maintain IEPs for children with disabilities. This requirement is now found at 20 U.S.C. § 1412(a)(4).

education, and must comport with the child's IEP." *Id.* at 203, 102 S.Ct. 3034.

■ The Court also held that the importance Congress attached to [the elaborate and highly specific] procedural safeguards [embodied in 20 U.S.C. § 1415] cannot be gainsaid. It seems to use no exaggeration to say the Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, see, *e.g.,* §§ 1415(a)-(d), as it did upon the measurement of the resulting IEP against a substantive standard. We think that the congressional emphasis upon full participation of concerned parties throughout the development of the IEP ... demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.

Thus the provision that a reviewing court base its decision on the "preponderance of the evidence" is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review .... The fact that § 1415(e) requires that the reviewing court "receive the records of the [state] administrative proceedings" carries with it the implied requirement that due weight shall be given to those proceedings.

*Id.* at 205–06, 102 S.Ct. 3034. The Court directs a "twofold inquiry" for reviewing courts:

First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to en-

able the child to receive educational benefits?

*Id.* at 206–07, 102 S.Ct. 3034. It is not the goal of the Act to maximize the potential of each handicapped child but rather to provide him or her with access to a free public education that will provide an educational benefit. *Id.* at 200–01, 102 S.Ct. 3034.

■ 5. In this case, "[t]he court's principal function is one of involved oversight." *Roland M.,* 910 F.2d at 989.

The Act contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial, and obligates the court of first resort to assess the merits and make an independent ruling based on the preponderance of the evidence. Nevertheless, the district court's task is something short of a complete de novo review.

The required perscrutation must, at one and the same time, be thorough yet deferential, recognizing the expertise of the administrative agency, considering the agency's findings carefully and endeavoring to respond to the hearing officer's resolution of each material issue. Jurists are not trained, practicing educators. Thus, the statutory scheme binds trial courts to give due weight to the state agency's decision in order to prevent judges from imposing their view of preferable educational methods upon the States.

*Id.* (citations and internal punctuation omitted). When the court pursues an inquiry under 20 U.S.C. § 1415(e)(2),

[t]he issue is not whether the IEP was prescient enough to achieve perfect academic results, but whether it was "reasonably calculated" to provide an "appropriate" education as defined in federal and state law. This concept has decretory significance in two respects.

For one thing, actions of school systems cannot, as appellants would have it, be judged exclusively in hindsight. An IEP is a snapshot, not a retrospective. In striving for "appropriateness," an IEP must take into account what was, and was not, objectively reasonable when the snapshot was taken, that is, at the time the IEP was promulgated .... We think it well that courts have exhibited an understandable reluctance to overturn a state education agency's judgment calls in such delicate areas—at least where it can be shown that "the IEP proposed by the school district is based upon an accepted, proven methodology." ... Beyond the broad questions of a student's general capabilities and whether an educational plan identifies and addresses his or her basic needs, courts should be loathe to intrude very far into interstitial details or to become embroiled in captious disputes as to the precise efficacy of different instructional programs.

*Id.* at 992 (citations omitted).

6. The party allegedly aggrieved must carry the burden of proving that the claimed procedural or substantive shortcomings of the IEP caused harm, *id.* at 995, or that the hearing officer's award was contrary to law or without factual support. "Neither the statute nor reason countenance 'Monday Morning Quarterbacking' in evaluation the appropriateness of a child's placement." *Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir.1993).

7. The state statute invoked by the parents provides, in relevant part:

Each school administrative unit operating schools shall:

\* \* \* \* \* \*

**3. Diagnosis and evaluation.** Provide educational diagnosis and evalua-

tion necessary to plan and implement a special education program for exceptional students within its jurisdiction;

\* \* \* \* \* \*

**5. Special education.** Provide special education for each exceptional student within its jurisdiction.

20–A M.R.S.A. § 7202.

### B. Procedural Mootness

9. MSAD 35 contends that the parents' appeal from the decision of the administrative hearing officer is moot because S.R. has formally graduated from high school and is too old to receive further educational services at public expense. Defendant/Cross Appellant's Memorandum of Law (Docket No. 51) at 12–14. The graduation and S.R.'s twentieth birthday took place after these two actions were filed. In response, the parents argue that the action is not moot because they may seek compensatory education for S.R. Plaintiffs' Reply Memorandum of Law ("Parents' Reply Memorandum") (Docket No. 52) at 2–4.

10. An eligible student may seek compensatory education under the IDEA after he is too old otherwise to qualify for such services for rights he claims the school district has denied him in the past. *Pihl v. Massachusetts Dep't of Educ.*, 9 F.3d 184, 189 (1st Cir.1993). However, the First Circuit subsequently held, in *Thomas R. W.*, 130 F.3d at 480, that such a claim is not included in a general prayer for further relief in a complaint that explicitly seeks only equitable relief and may not be raised for the first time in a reply brief submitted to the First Circuit on appeal. Neither the complaint in Docket No. 00–367–P–H nor the answer in Docket No. 00–242–P–C states a claim for compensatory education. Despite having been put on notice of this fact by the school district's argument, the parents have not moved to

amend either pleading to add such a claim, which only became available some time after those pleadings were filed. Given this state of the record, I offered MSAD 35 the opportunity to respond to the parents' argument in their reply memorandum, Order (Docket No. 53), and it chose to file a supplemental brief, in which it contends that the parents' mention of compensatory education in a "single-sentence assertion . . . at the end of their memorandum of law" is not sufficient to avoid mootness under *Thomas R.W.* District's Surreply Memorandum (Docket No. 54) at 3.

11. In *Thomas R. W.*, the First Circuit held that "[i]f pled in the alternative or otherwise evident from the record, a claim for damages will keep a case from becoming moot where equitable relief no longer forms the basis of a live controversy." 130 F.3d at 480 (citation and internal quotation marks omitted). Here, no claim for compensatory education is pleaded in the alternative, so the question is whether such a claim is "otherwise evident from the record" before this court. As the First Circuit also noted in that case, it is the general rule in the First Circuit that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Id.* (citation omitted).

12. It is evident from the record, in the most elementary sense, that the parents now claim compensatory education as a remedy. Plaintiffs' Memorandum of Law (Docket No. 43) at 43–44. This is the "single sentence" to which MSAD 35 refers. However, the parents provided a more expansive statement of their claim in their reply memorandum, before my order allowing further argument by MSAD 35 was issued. Plaintiffs' Reply Memorandum at 2–4. That presentation is more than a perfunctory statement and cannot be deemed a waiver of the claim. I am constrained to conclude as well that the claim for compensatory damages is "otherwise evident from the record" before this court at the time the matter was taken under advisement.

13. MSAD 35 also argues that the parents' failure to present a claim for compensatory education to the administrative hearing officer "should bar a compensatory education claim on appeal before this court." District's Surreply Memorandum at 3 n. 3. It cites two cases in support of this argument. In *Hampton Sch. Dist. v. Dobrowolski*, 976 F.2d 48, 53 (1st Cir. 1992), the First Circuit stated that "[c]laims of procedural errors not presented to the administrative hearing officer are not preserved for judicial review by the trial court." In this case, a claim for a particular remedy is at issue and that claim is in any event based on more than a claim of procedural error by MSAD 35, so *Dobrowolski* is not applicable. In *David D. v. Dartmouth Sch. Comm.*, 775 F.2d 411, 424 (1st Cir.1985), the court did say, with respect to a procedural error, that "for issues to be preserved for judicial review they must first be presented to the administrative hearing officer." Even if that pronouncement were not limited to a claim of procedural error, however, it could not be applied to bar a claim for a specific remedy that simply was not available at the time of the hearing before the administrative hearing officer. Such a holding would encourage delaying tactics in order to avoid resolution of an otherwise valid claim merely due to the passage of time. In *Thomas R. W.*, the student apparently became ineligible for services only after the administrative proceeding. 130 F.3d at 479–80. A claim for compensatory education becomes available, by its very nature, only after the student becomes otherwise ineligible for services. Raising such a remedial claim for the first

time in the reviewing court is the only option available to the parents under the circumstances present here.

14. For the foregoing reasons, I conclude that S.R.'s claim for compensatory education has been adequately raised under *Thomas R.W.* and is properly before this court.

## C. Substantive Mootness

15. That being said, I am nonetheless troubled by the fact that S.R. in fact received, for all that appears in the record, the very relief he and his parents initially sought in this action, by virtue of the administrative hearing officer's "stay put" ruling. That is, the parents specifically asked this court to vacate that portion of the hearing officer's decision that upheld S.R.'s placement with WOU for a full day, as opposed to his placement during the 1999–2000 school year at Marshwood for three hours daily and then at WOU for the remainder of the day. Complaint (Docket No. 00–367–P–H) at 6. They also asked the court "to order that the school must conduct a comprehensive evaluation of S.R. prior to making any significant change in his placement, as required by 34 C.F.R. § 104.35." *Id.* The hearing officer's "stay put" order provides:

> [T]he "current educational placement" for the purposes of the stay put claim advanced by the R[ ] family in this matter is the IEP that was in place for the 1999–2000 school year.... The argument in this proceeding is *about* the IEP for 2000–2001. Specifically, it is about the change in programming for the 7:30–10:30 time period during the academic year.

Administrative Record, Volume I, at 142 (emphasis in original).

16. The court must independently satisfy itself that an action pending before it is not moot. *El Dia, Inc. v.*

*Hernandez Colon,* 963 F.2d 488, 498 n. 11 (1st Cir.1992). A case becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome, or alternatively, when the party invoking federal court jurisdiction no longer has personal stake in the outcome of the controversy." *Thomas R. W.,* 130 F.3d at 479 (citation omitted). "A case is moot, and hence not justiciable, if the passage of time has caused it completely to lose its character as a present, live controversy of the kind that must exist if the court is to avoid advisory opinions on abstract propositions of law." *Id.* (citation omitted).

17. For all that appears in the record, that is the case here. The parents seek vacation only of that portion of the administrative hearing officer's decision that concerns S.R.'s placement outside Marshwood for the hours that he had spent in the school during the previous year and evaluation of S.R. "prior to making any significant change in his placement." As a result of the "stay put" order and the passage of time, no significant change in S.R's placement was made as a result of the proposed IEP or any action by MSAD 35. The only circumstances under which compensatory education might be available would arise if S.R. had not received what he sought in terms of his complaint during the 2000–01 school year. From all that appears, he received what he sought during that period. MSAD 35 seeks injunctive relief keeping S.R. "in a placement outside of Marshwood High School," Complaint (Docket No. 00–242–P–C) at 5, relief which is no longer available as a practical matter. Accordingly, both actions should be dismissed as moot.

## IV. Conclusion

For the foregoing reasons, I recommend that the consolidated actions be **DISMISSED** as moot.

### NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*