MR. and Mrs. R., on their own behalf and on behalf of their son, S.R., Plaintiffs

v.

MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 35, Defendant

No. CIV. 00–242–P–C.

United States District Court, D. Maine.

Dec. 12, 2003.

Richard L. O'Meara, Murray, Plumb & Murray, Portland, ME, for Mr & Mrs R, Consol Plaintiff.

Eric R. Herlan, Melissa A. Hewey, Drummond, Woodsum & MacMahon, Portland, ME, for Maine School Administrative District No. 35, Plaintiff.

**MEMORANDUM OF DECISION AND ORDER GRANTING IN PART MR. AND MRS. R.'S COMPENSATORY EDUCATION CLAIM AND REMANDING CASE TO THE ADMINISTRATIVE HEARING OFFICER FOR FURTHER FINDINGS**

GENE CARTER, Senior District Judge.

## I. Facts

S.R., the student whose educational plan is at issue in this case, has Down's Syndrome and during the time relevant to this case, he was entitled to receive special education services from Maine School Administrative District No. 35 ("MSAD 35" or "the District"). During the 1999–2000 school year, S.R.'s Individualized Education Plan ("IEP") provided that he would receive special education services at Marshwood High School ("Marshwood") from 7:30–10:30 a.m.; after that, he was delivered to the Work Opportunities Unlimited ("WOU") program, which provided opportunities for work experience until approximately 2:30 p.m. During his programmed time at Marshwood, S.R. displayed a variety of behavioral difficulties that challenged the special education staff working with him. Over the course of the 1999–2000 school year, the District representatives met with the family many times to address these issues, discuss S.R.'s IEP, and consider what changes should be made

to S.R.'s IEP for his final year of eligibility (2000–2001) for special education services through MSAD 35. In June 2000, the District presented Mr. and Mrs. R., S.R.'s parents, with a new IEP for the 2000–2001 school year that required S.R. to attend a WOU work-site training program for the entire school day. Mr. and Mrs. R. objected to the proposed 2000–2001 IEP and invoked the stay-put provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j), so that S.R. would remain in his 1999–2000 educational placement while awaiting resolution of his 2000–2001 IEP.[1]

An administrative hearing to determine the sufficiency of the 2000–2001 IEP was held, and the hearing officer determined that the WOU placement was acceptable but that the IEP was deficient in other respects. The hearing officer ordered that the District convene a Pupil Evaluation Team ("PET") meeting to develop a new 2000–2001 IEP with additional features. *See* Hearing Officer Decision dated October 31, 2000, Administrative Record Vol. V at 1644. Mr. and Mrs. R. contested the hearing officer's decision regarding S.R.'s placement by this civil action. *See* Complaint (Docket Item No. 1). The District filed a Counterclaim challenging other parts of the hearing officer's decision. *See* Answer and Counterclaim (Docket Item No. 4).[2] The Magistrate Judge recommended that the placement issue was substantively moot because "S.R. [had] received, for all that appears in the record, the very relief he and his parents initially sought in this action, by virtue of the administrative hearing officer's 'stay-put' ruling." *Maine School Admin. Dist. No.*

*35 v. Mr. and Mrs. R.,* 176 F.Supp.2d 15, 24–25 (D.Me.2001). This Court adopted the recommended decision of the Magistrate Judge and the parents appealed that decision. *See* Order Affirming the Magistrate Judge's Recommended Findings of Fact and Conclusions of Law (Docket Item No. 61). The Court of Appeals for the First Circuit determined that although the parents sought judicial review of the placement decision only and not of the order to add other features to the IEP, the case was not substantively moot because

> S.R. never enjoyed the benefits that would have flowed from the implementation of those other features. In short, while S.R. was not relegated to a work site for the 2000–2001 school year, he may not have received an appropriate IEP for that year (and, thus, may not have received the [free appropriate public education] to which he was entitled).

*Maine School Admin. Dist. No. 35 v. Mr. and Mrs. R.,* 321 F.3d 9, 19 (1st Cir.2003).

By the time the Court of Appeals considered this case, S.R. had exceeded the maximum age for eligibility for special education services from the District. Recognizing this, the Court of Appeals framed its decision in terms of whether S.R. is entitled to a compensatory education for the 2000–2001 school year and remanded the case to obtain an answer to that question.

## II. Discussion

### A. Entitlement to Compensatory Education While Stay–Put Order in Effect

The Court of Appeals has clearly indicated that the District may be responsible

1. Under threat of permanent suspension from Marshwood administrators, Mr. and Mrs. R. withdrew S.R. from Marshwood toward the end of September 2000. The Court of Appeals observed, that S.R.'s withdrawal is irrelevant to his parents' compensatory education claim. *See Maine School Admin. Dist. No. 35 v. Mr. and Mrs. R.,* 321 F.3d at 13 n. 2.

2. The Complaint and Answer and Counterclaim were filed in Civil No. 00–367–P–H. That case was later consolidated with this case.

to S.R. for compensatory education during the time that the 1999–2000 IEP was in stay-put status in the 2000–2001 school year and that signal sets the contours of this Court's consideration of the matter. Specifically, the Court of Appeals has directed that this Court consider whether the "continuation of this benighted [1999–2000] placement into the 2000–2001 school year deprived S.R. of the compendium of services reasonably necessary to constitute a [free appropriate public education] FAPE." *Maine School Admin. Dist. No. 35 v. Mr. and Mrs. R.*, 321 F.3d at 19.

 The District puts forth numerous arguments, citing case law from other circuits, to support its position that S.R. is not entitled to a compensatory education while the stay-put order was in effect, including the assertion that even if the hearing officer's order is upheld, S.R. is not entitled to a compensatory education because the family never sought compensatory education from the hearing officer for the period prior to his order. The District also argues that S.R. is not entitled to a compensatory education because once it became aware of the hearing officer's decision, the District quickly implemented that order and, thus, should not be held responsible. This Court, out of respect for the Court of Appeals in this case, disagrees and concludes that Mr. and Mrs. R.'s claim for compensatory education is a viable one in this case.

With respect to the District's claim that Mr. and Mrs. R. are precluded from seeking a compensatory education because they never sought compensatory education from the hearing officer, the Court of Appeals stated "the [parents'] failure to raise a then-nonexistent compensatory education claim before the hearing officer is not fatal to judicial review." *Maine School Admin. Dist. No. 35 v. Mr. and Mrs. R.*, 321 F.3d at 18 (citing *Frazier v.*

*Fairhaven Sch. Comm.*, 276 F.3d 52, 59 (1st Cir.2002) and *Pihl v. Mass. Dep't of Educ.*, 9 F.3d 184, 190–91 (1st Cir.1993)). In addition, the Court of Appeals rejected the District's argument that it was forced, through the invocation of the stay-put provision, to maintain S.R.'s contested 1999–2000 IEP into the 2000–2001 school year. Explaining its decision, the court stated:

[c]onferring blanket immunity from compensatory education claims during the course of a stay-put placement would reward school districts for misfeasance or nonfeasance in providing appropriate educational services. *Cf. Jefferson County Bd. of Educ. v. Breen*, 853 F.2d 853, 857–58 (11th Cir.1988) (awarding compensatory education to deter school districts from unnecessarily prolonging litigation); *Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 916 (1st Cir. 1983) (condemning a rule that would allow a party who shirks its duties during a stay-put placement to escape liability for its laxity). The case law, though sparse, suggests that courts should refuse to confer any such blanket immunity. *See, e.g., W.B. v. Matula*, 67 F.3d 484, 500 (3rd Cir.1995); *M.C. v. Voluntown Bd. of Educ.*, 56 F.Supp.2d 243, 250 n. 7 (D.Conn.1999). We so hold: claiming to be caught between a rock and a hard place is no excuse for dereliction of duty. The IDEA charges school districts with making reasonable efforts both to work with parents and to satisfy the needs of special education students. That entails the responsibility to find a path that runs between the rock and the hard place. Knee-jerk compliance with a stay-put provision does not negate that responsibility.

*Maine School Admin. Dist. No. 35 v. Mr. and Mrs. R.*, 321 F.3d at 19–20. On that predicate, this Court concludes that even if the District swiftly implemented the ad-

ministrative hearing officer's order, such action does not preclude Mr. and Mrs. R.'s claim for compensatory education.

■ The law of this circuit provides that compensatory education is available in this case if it is demonstrated that S.R.'s IEP was "so inappropriate that [he was] receiving no real educational benefit." *Maine School Admin. Dist. No. 35 v. Mr. and Mrs. R.*, 321 F.3d at 17–18 (citing *M. C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 396 (3rd Cir.1996); *Murphy v. Timberlane Reg'l Sch. Dist.*, 22 F.3d 1186, 1195 (1st Cir.1994)); *see also Pihl*, 9 F.3d at 187–88. The right to a compensatory education "accrue[s] from the point that the school district knows or should know of the IEP's failure." *M. C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d at 396.

■ After a thorough review of the administrative record, the opinion of the Court of Appeals, and the argumentation presented by counsel, the Court concludes that the 1999–2000 IEP in stay-put status did not provide S.R. with more than a *de minimis* educational benefit. S.R.'s IEP had failed the previous year; if not completely, the situation had certainly deteriorated by the spring of 2000 to the point that no educational benefit was being derived by S.R. That failure should have been known to the District and is clearly exemplified in the record by, among other evidence, the ten PET meetings that were convened over the course of the 1999–2000 school year, the development of a substantially different IEP for the 2000–2001 school year, and S.R.'s behavioral difficulties while at Marshwood during the 1999–2000 school year. The record reveals that

the 1999–2000 IEP in place as a result of the stay-put order did not afford S.R. any real educational benefit and, thus, S.R. was not afforded a FAPE for that time. Accordingly, S.R. is entitled to compensatory education for that portion of the 2000–2001 school year in which the stay-put order was in effect.[3].

### B. Decision of the Hearing Officer

■ If the stay-put order had remained in effect for the entire 2000–2001 school year, then it is not necessary for this Court to review the decision of the hearing officer. It appears, however, that the proposed 2000–2001 IEP may subsequently have been modified, as a result of the hearing officer's directive to address certain deficiencies. The District filed a Motion to Supplement the Administrative Record on March 14, 2001, in which it asserted that S.R.'s 2000–2001 IEP was modified and finalized in January 2001. That Motion was denied by the Magistrate Judge as moot. *See* Defendant/Cross Appellant's Motion to Supplement the Administrative Record and Incorporated Memorandum of Law (Docket Item No. 38) and the Magistrate Judge's endorsement thereon. In light of the decision by the Court of Appeals, the Court finds that the District's motion to supplement the record with evidence of its action taken pursuant to the hearing officer's decision is not moot. Therefore, the Court will order this case remanded to the administrative hearing officer for a determination of whether the IEP was modified and the stay-put order lifted.

3. In reaching this conclusion, the Court has considered and rejects the District's arguments that Mr. and Mrs. R's claim for compensatory education should be reduced. Specifically, the District asserts that because the parents objected to very little in the 2000–2001 IEP, the amount of their compensatory education claim should be decreased accordingly. The Court does not view their objections to have been so insignificant as to entitle the District to any suggested reduction. This Court also rejects the District's argument that by withdrawing S.R. from Marshwood, the family failed to mitigate their damages.

█ If the 2000–2001 IEP was modified and the stay-put order lifted, then it would be necessary for this Court to review the decision of the hearing officer in order for Mr. and Mrs. R.'s claim for compensatory education to be resolved with respect to the period of time after the stay-put order was lifted. In an attempt to attain some minimal level of judicial economy, this Court will review now the decision of the hearing officer so that the remaining portion of the compensatory education claim may be wholly determined by the administrative hearing officer on remand.

The Court notes that the parties have always agreed that the goals and objectives of the 2000–2001 IEP were satisfactory. The parties disagree, however, about whether the specific provisions set forth in the 2000–2001 IEP would have advanced S.R. toward those shared goals and objectives. The hearing officer determined that the 2000–2001 IEP was flawed in three respects: (1) it failed to describe in sufficient detail how the goals and objectives set forth in the IEP were to be accomplished in the WOU placement; (2) it did not require that S.R.'s special education services be delivered by, or under the direct supervision of, properly certified providers; and (3) it failed to include a behavioral intervention plan to be employed by Marshwood or WOU staff. *See* Hearing Officer Decision dated October 31, 2000, Administrative Record Vol. V at 1635.

The parents contend that the hearing officer erred as a matter of law by determining that S.R.'s placement was appropriate while also concluding that the IEP needed revision. Specifically, the parents assert that placement can properly be determined only after the development of a satisfactory IEP. The District first responds that the hearing officer erred in finding the IEP deficient because the details regarding how the district is going to accomplish the stated goals are not required as part of the IEP. The District also asserts in its Counterclaim that the hearing officer exceeded his authority under the IDEA by ordering the clarifications to the IEP and that he erred in concluding that S.R.'s behaviors at school fell short of the "substantial likelihood of injury" standard for removal from school during the hearing process. Defendant/Cross Appellant's Memorandum of Law (Docket Item No. 51) at 41–48. Finally, the District asserts that even if there were deficiencies in S.R.'s 2000–2001 IEP, the hearing officer correctly concluded that the out-of-school placement was appropriate because the goals and objectives in S.R.'s IEP are "functional in nature"; that is, "directed at developing real world skills." *Id.* at 41.

The Court has thoroughly reviewed the administrative record and the decision reached by the administrative hearing officer, it has considered the argumentation presented by counsel, and it agrees with the conclusions reached by the administrative hearing officer regarding the inadequacies of the 2000–2001 IEP in the three aspects he enumerated. To the extent that the IEP was modified as required by the hearing officer and the stay-put order was lifted, S.R. may nevertheless be entitled to a compensatory education for the remainder of the 2000–2001 school year after the new IEP was completed, if that new IEP failed to provide S.R. with a FAPE. The Court does not have the evidence in the record now before it that is necessary to make such determinations.

### III. Conclusion

It is **ORDERED** that Mr. and Mrs. R's claim for relief pursuant to Count I of their Complaint in the form of compensatory education be, and it is hereby, **GRANTED** for that portion of the 2000–2001 school year that the stay-put order

was in effect. The Court further **OR-DERS** that this case be remanded to the administrative hearing officer to determine:

(1) if, and when, the District developed a modified IEP for S.R.;

(2) if so, whether the modified 2000–2001 IEP for S.R. satisfactorily addressed the deficiencies that the hearing officer identified in the original 2000–2001 IEP; and

(3) whether the modified 2000–2001 IEP as a whole, including S.R.'s placement, would have afforded S.R. a FAPE.

If the hearing officer finds that the modified IEP addressed the deficiencies and provided S.R. a FAPE, then the hearing officer is **ORDERED** to determine the monetary value of the compensatory education services that S.R. is entitled to for the period of time that the stay-put order was in effect. On the other hand, if the hearing officer finds that there was no modified IEP or that the modified IEP did not correct the deficiencies and provide S.R. a FAPE, then the hearing officer is **ORDERED** to determine the monetary value of the compensatory education services that S.R. is entitled to for the entire 2000–2001 school year. In making these determinations, the hearing officer should order all evaluations of S.R. that are necessary to determine what services he is entitled to pursuant to this Order.

It is further **ORDERED** that Maine School Administrative District No. 35's Counterclaim be, and it is hereby, **DENIED**.